# 14-2291

---
---

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

NICHOLAS M. LUCAS,

Plaintiff-Appellant,

___v.___

UNITED STATES OF AMERICA and the
DRUG ENFORCEMENT ADMINISTRATION,
an agency of the United States of America,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF OF APPELLANT

**Wayne P. Smith**
**Attorney for Appellant**
**157 Barrett Street**
**Schenectady, NY 12305**
**(518) 393-1371**
**Bar Roll No. 102-631**

APPELLANT'S BRIEF - TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................i

STATEMENT OF SUBJECT MATTER AND ................................................Page 1
APPELLATE JURISDICTION

STATEMENT OF THE ISSUE PRESENTED    ...........................................Page 3

STATEMENT OF THE CASE               .....................................................Page 4

THE FACTS                   ........................................................................Page 4

SUMMARY OF ARGUMENT               ....................................................Page 9

ARGUMENT...................................................................................................Page 12

CONCLUSION               ........................................................................Page 25

APPELLANT'S BRIEF - TABLE OF AUTHORITIES

**Case Law:**

Lucas v. United States, 2014 U.S. Dist. Lexis 70833.................................................8

United States v. Currency Totaling $48,318.08, 609 F. 2d 210.............................18
(5th Circuit 1980)

United States v. Dupree, 919 F. 2d 234 ................................................................15

United States v. $515,060.42, 152 F. 3d 491 (6th Circuit, 1998) ...........................18

United States v. $38,000 in US Currency, 18 F. 2d 1538,...................13, 18, 20, 22
(11th Circuit 1987)

United States v. $191,910, 16 F. 3d 1051 .............................................................14

Valderrama v. United States, 417 F. 3d 1189 (11th Circuit, 2005) ........................24

**Other Treaties**

FRAP §3 .................................................................................................................2

FRAP §28 ...............................................................................................................1

FRCP12(b)(1) and (6)......................................................................................1, 2, 8

18 USC §983 ................................................................................................8, 20, 25

18 USC §983(b) .....................................................................................................1

18 USC §983 ( c )..................................................................................................14

18, USC §983(e), §1983 ...................................1, 3, 7, 8, 9, 12, 13, 15, 16, 26

19 USC §1595-1627A ...........................................................................................20

19 USC §1602-1619 ................................................................................1

21 USC §881 .................................................................................20, 23

21 USC §881(a) ..............................................................................13

21 USC §881(d), Supplemental rule A ........................................20

21 USC §881(8) ..............................................................................16

28 USC §1346(a)(2) or §1391(e) ..................................................1

Black's Law Dictionary, 7th edition, West Group, 1999...........................18

Reporter: 26 Los Angeles Lawyer 39 (October 2003) ....................20

Restatement Contracts §150(2) (1932) ..................................................18

 S. Williston, a Treatise on the law of Contracts  §102-03 .....................18

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is an appeal from the District Court of the Northern District of New York Memorandum-Decision and Order dated May 22, 2014 (A-3) from which a timely appeal was taken from said final Order dismissing Petitioner's Petition upon Motion of the government pursuant to FRCP12(b)(1) and (6) which Notice of Appeal was duly filed on June 20, 2014 (A-1).

The District Court had jurisdiction of this proceeding pursuant to Title 18, USC §983(e), §1983 and Title 19 USC §1602-1619 as well as 28 USC §1346(a)(2) or §1391(e). Such Petition, commonly referred to a §983(b) Petition (A-41) brought pursuant to the Civil Assets Forfeiture Reform Act of 2000 ("CAFRA") which statute was designated by Congress as the sole and exclusive remedy for a Petitioner who seeks the recovery of assets seized by an agency of the United States and was forfeited pursuant to an administrative forfeiture if Petitioner claims such seizure was done without either proper notice to relevant parties, without due process of law, and/or without any lawful or statutory right to do so.

This Court has subject matter and appellate jurisdiction as required by FRAP §28 in that such appeal is taken from a final Order of the District Court and

such Order is subject to de novo review because the issues raised herein are matters of law and not fact as the District Court dismissed Petitioner's Petition on Motion by the government pursuant to FRCP §12(b)(1) and (6).  The basis of such dismissal of the Petition was that the District Court found Petitioner lacked Article III and statutory standing to maintain this action.

This appeal is taken as of right pursuant to FRAP §3.

## STATEMENT OF THE ISSUE PRESENTED

The issue is whether or not Petitioner, Nicholas Lucas, as assignee of his brother Justin Lucas, of a bail receipt given to Justin Lucas by the Sheriff, had the requisite Article III and statutory standing to bring a Petition to set aside an administrative forfeiture pursuant to 18 USC §983(e) of the cash bail posted by Justin Lucas in a local criminal Court for Nicholas Lucas, now the Petitioner herein.

## STATEMENT OF THE CASE

### THE FACTS

On January 13, 2011, Justin Lucas, a resident of Martha's Vineyard, in the Commonwealth of Massachusetts, posted $50,000 cash bail fixed by a local Court, with the Otsego County Sheriff, in the State of New York, on behalf of his brother, the Petitioner herein, Nicholas Lucas, who had been arrested and arraigned on state charges involving the possession of marijuana.  Justin was given a bail receipt by the Otsego County Sheriff's Office (A-13) but immediately thereafter was then informed by a Sheriff's Investigator that the bail money was being held as a part of a drug investigation and that his brother would not be released on bail. Following a plea resolution agreed upon months later with local prosecutors with respect to the pending drug possession charges against Nicholas Lucas, his defense counsel by letter dated September 16, 2011 (A-16) to the Otsego County Sheriff then requested the return of the bail money.  By letter dated September 16, 2011 (A-18) to Nicholas Lucas' defense counsel the Sheriff informed counsel that the bail money had previously been turned over to DEA.  This was the first time that either Justin Lucas or Nicholas Lucas became aware that the bail money was no longer in the possession of the Sheriff.  The demand for the return of the bail monies by counsel on September 16, 2011 made by Petitioner was pursuant to a

written assignment duly executed by Justin Lucas to his brother Nicholas Lucas (A-14,15), with the aid of separate counsel, on July 25, 2011.

A State Court action was commenced on October 22, 2012 by Nicholas Lucas[1] against the Sheriff for, inter alia, the wrongful withholding of the bail money and pursuant to discovery proceedings in the State Court case Plaintiff's counsel on behalf of Nicholas Lucas discovered all of the details for the first time with respect to the administrative forfeiture proceeding that occurred including being provided with a copy of the Declaration of Forfeiture dated May 19, 2011 (A-37). Counsel for Nicholas Lucas also learned for the first time that the bail money seized on January 13, 2011 from Justin Lucas by the Sheriff had been turned over to the DEA about a week after the seizure by the Sheriff and that the final disposition date of such administrative proceedings conducted by the DEA was June 21, 2011.

It was also discovered by Petitioner's counsel that the Notice of the administrative forfeiture allegedly delivered to Justin Lucas as well as Nicholas Lucas (A-21, 29, 30, 31, 32, 33, 36) were sent to addresses that were not the residence of either Lucas brother and in fact the current and proper address of both

---

[1]Later dismissed by New York Supreme Court, a Notice of Appeal was duly filed by Nicholas Lucas but perfecting of said appeal will abide the events of Federal Court proceedings.

Page 5

the Lucas brothers was right under the nose of the government because the address of Justin was on the bail receipt itself (A-13) for Justin Lucas, to wit, Martha's Vineyard, in the Commonwealth of Massachusetts, and it was also well known to law enforcement that Nicholas Lucas remained in the Otsego County Jail which had been his address for the past several months since the date of his arrest on January 7, 2011.  Justin Lucas, an out of state resident, had his own business as a landscaper on Martha's Vineyard and he was <u>not</u> a target or the subject of any criminal investigation or proceedings and the cash bail money was <u>not</u> proceeds of any illegal drug investigation for criminal proceedings against Nicholas Lucas or Justin Lucas.  There was never any evidence to the contrary but that Justin Lucas came to the State of New York with the best of intentions to bail out his brother, but upon posting of such bail and after having been given a bail receipt was then told without further explanation that the bail money was being seized by the Sheriff's Office as a part of an investigation.

Discovery also disclosed that Justin Lucas was also further the subject of intense questioning by the Sheriff's Investigator without any basis therefore. After returning home without his money and not having heard anything further, Justin Lucas, with a landscaping business to run during the all important summer months, and with nothing but distaste in his mouth for the actions of the Otsego

Page 6

County Sheriff, retained local counsel in Albany, New York, for the purpose of assigning his bail receipt to his brother Nicholas on July 25, 2011.

This decision by Justin Lucas was made for the very practical reason of not wanting to incur further legal fees rendered by his Albany attorney to try to recover his bail money and with the further hope that the recovery of such bail money would be of some help to his brother Nicholas for counsel fees and related investigation expenses concerning Nicholas' then pending State Court charge for the possession of marijuana.

It is the position of Appellant herein, Nicholas Lucas, that said assignment was duly made between the brothers Justin and Nicholas Lucas pursuant to well recognized and traditional contract principles of the state law of New York, particularly concerning the assignment of bail receipts and the consideration was that of the love and affection between siblings along with the practical consideration therefore that Justin not only had a business to run on an island out of state but also did not wish to incur counsel fees or further aggravation from the New York proceedings then pending against his brother Nicholas.

Upon Nicholas Lucas, as assignee of Justin Lucas, petitioning the District Court (A-41) to set aside the administrative proceedings pursuant to 18 USC §983(e) alleging lack of proper notice, lack of due process, and lack of compliance

with proper procedure, the government moved pursuant to FRCP §12(b)(1) and (6) to dismiss said Petition (A-19, 20) alleging that Nicholas Lucas lacked Article III standing and failed to meet certain statutory requirements of 18 USC §983. The Chief Judge, Gary L. Sharpe, of the Northern District of New York granted the government's Motion to Dismiss said Petition, a copy of which reported Decision, Lucas v. United States, 2014 U.S. Dist. Lexis 70833 is included in the joint Appendix submitted herewith (A-3).

The District Court never reached or considered Petitioner's lack of notice related claims pursuant to 18 USC §983(e), or related issues having decided as a dispositive ruling that Petitioner lacked Article III and statutory standing to bring the proceeding.

## SUMMARY OF ARGUMENT

The Petitioner, Nicholas Lucas, alleges that as assignee of his brother, Justin Lucas, he had the requisite Article III standing to bring this 18 USC §983(e) proceeding to set aside an administrative forfeiture of the bail money and met the statutory requirements to do so. The bail money was not in any way shown to be connected with criminal activity, it was <u>not</u> seized from Nicholas Lucas at the time of his arrest, the bail was his brother Justin's separate money, Justin Lucas was never the target of or charged with any criminal proceeding, so the government should not be able to rely upon any "relation back" theory that the bail money was seized as a part of a criminal proceeding because both Justin Lucas and his money were untainted by any criminal conduct of Nicholas Lucas at the time of seizure of the bail money when it was posted by Justin Lucas on January 13, 2011 with the Sheriff.

Petitioner, Nicholas Lucas, should have been recognized as valid assignee of his brother Justin Lucas' claim to the bail money under New York Contract Law and it should be entirely irrelevant that through happenstance of the timing of the administrative forfeiture proceeding by the DEA which had been commenced and particularly the last date of disposition of June 21, 2011. The mere fact that the assignment between Justin and Nicholas Lucas occurred a month later on July

25, 2011 should not thereby allow the government and the Court below to accept the argument by the government that Justin Lucas at the time of the assignment on July 25, 2011 no longer had anything to assign after June 21, 2011 because Justin Lucas' legal interest was allegedly extinguished by virtue of the forfeiture proceeding which had concluded on June 21, 2011.  This is so because the record is clear that the government never duly noticed Justin Lucas of the administrative forfeiture proceeding as required by statute by using his current address that was on the bail receipt rather than the DEA using other erroneous or long ago past address(es) from years earlier.  The record was also clear that the bail money was not drug money relating back to Nicholas Lucas' arrest on June 5, 2011.

Appellant argued in District Court that the administrative proceedings should have been declared void ab initio for failure to give such proper notice to Justin Lucas at his current address as contained on the bail receipt itself when the money was seized from him on January 13, 2011.  That being the case, the so called last date of the effective date of the administrative proceedings on June 21, 2011 should have had no bearing on the date of the assignment of the bail receipt a month later. Otherwise, the Appellant unsuccessfully argued below, the government would be free to seize the money of an innocent party such as Justin Lucas who was merely attempting to bail his brother out on a marijuana charge but only to find out later,

after the conclusion of an administrative forfeiture proceeding which he was never aware, or given proper notice of, that because it was fortuitous that he had assigned his rights to the bail money after the conclusion of such administrative proceedings, that it was too late now only because the DEA chose to use the wrong address from that on the bail receipt.  The precedent has now been set for the DEA conduct of administrative forfeiture proceedings in similar proceedings. If the DEA seizes money with no nexus to criminal conduct as defined in §983, such as in the instant case where bail money is posted by an innocent brother of the Defendant, the DEA need only send the required notice to the wrong address from that set forth on the bail receipt and when a claim of no notice is filed by the claimant, the government can then object to standing to file such a claim, especially if the original owner assigned the bail receipt, so the government gets to keep the money.

This Court can also find a way to exercise its equitable jurisdiction to do the right thing in a proper case where there is no statutory remedy.

## ARGUMENT

As relevant here, Courts have recognized that a party seeking to challenge the government forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the Court of its standing to contest the forfeiture.  (Citations omitted, see page 5/6 of the District Court's Decision appealed from).  The Court below found that Petitioner did not have standing to contest the forfeiture because he was not the party in possession of the property at the time it was seized (A-3).  The District Court went on to comment in footnote 2 on page 4 of the Decision that Nicholas Lucas (the Petitioner herein) spent the bulk of his response to Respondent's Motion to Dismiss arguing the merits of the underlying forfeiture, and whether the initial seizure of the money was supported by sufficient evidence.  While Appellant recognizes the proposition that once forfeiture has occurred, as the District Court pointed out in said footnote, the sole remedy is that provided under 18 USC §983(e) to challenge whether the DEA followed the proper procedural safeguards in forfeiting the property - that is whether it provided adequate notice and an opportunity to be heard.  Appellant concedes that general proposition for purposes of the legal discussion here.  However, Appellant would first ask that this Court keep in mind that if this were a proceeding brought by the government for judicial

Page 12

forfeiture pursuant to 21 USC §881(a) and not an administrative forfeiture proceeding, the government would have had to allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture; in particular, that the government had probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance. Probable cause in such context refers to reasonable grounds for belief supported by less than prima face proof but more than mere suspicion.  See United States v. $38,000 in US Currency, 816 F. 2d 1538.

In our case it is unchallenged that the $50,000 bail money posted by Justin Lucas was not drug money and had no nexus to the state criminal charges facing Nicholas Lucas for the possession of marijuana.  That being said, should this Court as a matter of due process and equal justice then allow the government to keep the $50,000 bail by an administrative proceeding by the DEA when it is uncontested that they gave written notice to the wrong address for Justin Lucas whose address was clearly stated on the bail receipt (A-13) given to him by the Otsego County Sheriff?  That is the issue here.  It is clear that Congress, when it enacted CAFRA intended that proper notice be given to relevant parties (see 18 USC §983(e).  The record is also clear that counsel for Petitioner never discovered the facts surrounding the federal seizure following the Sheriff's seizure on January

Page 13

13, 2011 until being notified by the Sheriff by letter dated September 16, 2011 (A-18) or even later during discovery during a separate State Court action that the Declaration of Forfeiture (A-37) had a last disposition date of June 21, 2011 which was by happenstance about a month prior to the assignment of the bail receipt by Justin Lucas to Nicholas Lucas on July 25, 2011 (A-14).  It is uncontested that until September 16, 2011 both Justin Lucas and Nicholas Lucas and his counsel were of the opinion that the Sheriff still had the bail money.  Appellant would argue that he has Article III standing because he is an assignee of the bail receipt recognized as such under New York Law and therefore had a recognized interest in the seized item sufficient to satisfy the Court of standing to contest the forfeiture.  See Restatement of Contracts and definition of assignment Black's Law Dictionary cited below.  Also, United States v. $191,910, 16 F. 3d 1051 "this interest need not be ownership interest, but it can be any type of interest."

The Appellant asserts here that the government never satisfied the first requirement under the statute authorizing seizure because the bail money never fit the definition of being a part of criminal conduct in violation of federal law and they have never been called upon to do so.  (See 18 USC §983 (c), placing burden of proof on government).  Granted, in most cases there is an obvious nexus between the drugs and the cash upon the arrest of an alleged drug dealer.  The

District Court found that that statutory requirement was an argument by Appellant

on the merits which would not be reached by the Court and further since the

administrative proceeding was concluded a month before the actual assignment

there was nothing for Justin Lucas to assign to his brother Nicholas.  Ergo, no

Article III standing or statutory standing under §983(e).   In counterpoint,

Appellant would argue here that under New York Law not only was the

assignment of the bail receipt valid (see United States v. Dupree, 919 F. 2d 234,

(holding state law controls legal interest), the seizure of Justin Lucas' interest by

the Sheriff was also void ab initio for federal law purposes because it is alleged

there was no nexus between the bail money and the criminal conduct required

under federal law in the first instance to have triggered the government to have a

vested interest sufficient to  commence an administrative forfeiture proceeding in

the first place by DEA.  In other words, Appellant would argue here that Justin

Lucas never lost his rights to the bail money up until he voluntarily did so by

assignment on July 25, 2011 because not only was there no nexus between the bail

money and the crime that Nicholas Lucas was charged with there was no proper

notice (see  §983(e) ) given to Justin Lucas at the address set forth on the bail

receipt itself which was right under the noses of government agents and DEA at

the time of forfeiture.  Under New York contract law, Justin Lucas was still the

Page 15

rightful owner of the cash receipt until the assignment because under federal law the government's rights never vested at the time of the seizure.  Instead, the government chose to use either out of date or totally erroneous addresses for notice to Justin Lucas as is clearly set forth in the Record (A-29 -31) resulting in the defective proceeding that should not now be used as a sword to defeat Petitioner's standing.  The government cannot seriously argue that the property vested in the United States upon commission of the act giving rise to the forfeiture as cited in the District Court's Decision, based upon 21 USC §881(8) or §983(e) especially without allowing and in fact precluding Appellant's argument that the government's right, title, and interest in the subject bail money never vested because it had never been shown to have been a nexus between the bail money and a violation of federal law sufficient to have triggered the seizure in the first instance.  Instead, the Courthouse was closed by the District Court to both Justin and Nicholas Lucas, irrespective of the assignment issue, because of a finding of insufficient Article III standing so the government need not even have to explain or defend the lack of notice to Justin Lucas as required by the statute.

Furthermore, the District Court also found that since Nicholas Lucas was never entitled to notice of administrative civil forfeiture because it is undisputed that at the time of the seizure and subsequent forfeiture, Nicholas Lucas had no legal

Page 16

interest in the money at that point in January, 2011, and that he only purported to acquire his rights and interest, if any, by way of the assignment on July 25, 2011 at least one month after the forfeiture had occurred. Again, the District Court finding ignores the fact that state contract law not only provided him with an interest in the subject property but also should have done so because Justin Lucas never should have lost his interest in the subject property in the first place because the original premise for the seizure by the government in the first instance was that the bail money must have had some nexus to violation of federal law as a condition precedent for vesting puposes which was not only not the case but the District Court refused to even reach that argument. Instead, the Petition of Appellant was dismissed at the pleading stage.

Clearly, the District Court in denying Appellant standing thereby allowed the government to keep the bail money notwithstanding their own wrongful conduct in not giving proper notice to Justin Lucas in the first place. With respect to Article III standing, which is the subject of the challenge here, a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property. (Citations omitted). The Article III standing requirement is thereby satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be remedied at least in part by the return of

Page 17

the seized property.  In that regard, a 6th Circuit case, <u>United States v. $515,060.42</u>

152 F. 3d 491 (6th Circuit, 1998)is instructive.  That case, a bail case, held in

footnote 4, Article III requires only that a claimant allege, inter alia, a personal

stake in the outcome of the controversy, i.e. an actual or threatened injury and in

another footnote 3 cited <u>United States v. $38,000 in US Currency</u>, 18 F. 2d 1538,

(11th Circuit 1987) finding that because bailee had a possessory interest in bail

currency, bailee claimant had standing.  Moreover, in <u>United States v. Currency</u>

<u>Totaling $48,318.08</u>, 609 F. 2d 210 (5th Circuit 1980), a case involving seized

unreported currency, cited at footnote 4 the general rule that an assignment is not

ineffective because it is voidable by the assignor for lack of consideration. See

Restatement Contracts §150(2) (1932), and S. Williston, a <u>Treatise on the law of</u>

<u>Contracts</u>  §102-03 and see Black's Law Dictionary, 7th edition, West Group, 1999

which defines assignee an absolute assignment as follows: (1) "One to whom

property rights or powers are transferred to another"; (2) assignment "the transfer

of rights or property"; and (3) absolute assignment "an assignment that leaves the

assignor no interest in the assigned property or right". There should be no question

the assignment as written was valid under New York law which controls legal

interest.  Yet, the District Court referred to the assignment in this case as a

purported assignment because it found that there was nothing to assign because

Page 18

the administrative forfeiture was completed the month before the assignment.  So,

by not recognizing that this was clearly a defective notice case involving the cash

bail and with no nexus to criminal acts involving federal law, District Court

proceeded to find that Appellant could not satisfy the statutory requirement for

standing either because only parties entitled to notice of administrative civil

forfeitures are those who appear to have an interest in the seized article at the time

of seizure.  In this case it is conceded that at the time of the seizure and subsequent

forfeiture, Nicholas Lucas had no legal interest in the money at issue up until the

assignment but we should not overlook the conduct of the government (both the

Sheriff and the DEA) in the first instance that Justin Lucas never should have lost

his interest in the bail money in the first place (and Nicholas Lucas stepped into

those shoes under state law) because it was not used in violation of federal law as

required by the statute and the government's own paperwork showed they gave

notice to him at the wrong address.  Therefore, Justin Lucas never should have lost

his interest by seizure or administrative forfeiture but for the wrongful conduct of

the Sheriff and the subsequent prima facie showing of never having been given

notice that the bail money was even the subject of an administrative forfeiture

proceeding should be considered by this Court.  No citizen should lose his

property without notice or due process, and the Congressional legislative history is

Page 19

clear in that respect.  In short, the District Court left both Justin Lucas and

Nicholas Lucas in a classic "catch 22" situation.  In such a case, the government

should lose, not the out of state innocent brother trying to bail out his brother on a

marijuana possession charge.  That is why Congress amended the statue in 2000.

See Reporter: 26 Los Angeles Lawyer 39 (October, 2003) for an excellent review

of the legislative history and the lack of notice concerns expressed by members of

Congress, Hyde, Barr, and Jackson-Lee which the statute was intended to correct.

It is respectfully submitted that what happened here was an unforseen defect

in the rubric a claimant is required to adhere to.  As noted in United States v.

$38,000, per United States Currency, 816 F. 2d 1538, (11th Circuit, 1987), there

are, unfortunately, no procedural rules specifically designed to govern §881

forfeiture actions, which are similar to  §983 actions such as we have here, in that

Congress, rather than enacting rules to govern these actions, borrowed the

forfeiture rules of both the customs laws, 19 USC  §1595-1627A, and the

Supplemental Rules for certain admiralty and certain maritime claims, 21 USC

§881(d), Supplemental rule A.  Neither of these procedures, however, that Court

pointed out are directly applicable to  §881 forfeitures nor  §983 forfeiture cases as

in this case.  In US v. $38,000, supra,  the Appellants had argued on appeal that it

was improper for the District Court to have considered standing prior to

determining whether the government had the requisite probable cause to obtain the forfeiture.  Although that Court rejected Appellant's claim that probable cause, not standing, is the threshold issue, they reversed the District Court on the standing issue because Appellants had satisfied the standing requirement applicable to them.  The Court in analyzing Article III standing pointed out that there are two different forms of standing at issue in that case: Article III standing and statutory standing.  It found that it was well established that in order to contest the forfeiture, a claimant must first demonstrate a sufficient interest in the property to give him Article III standing; otherwise there is "no case or controversy" in the Constitutional sense, capable of adjudication in the Federal Court (citations omitted), however, the Court continued that "contrary to Appellant's argument, unless they have Article III standing, Federal Courts lack jurisdiction to consider their claims, including their claim that the government did not have the requisite probable cause to seize the defendant's property.  However, the Court also found that there was no doubt that the owner of the currency had Article III standing and appellant argued there, as does Nicholas Lucas as assignee of his brother in our case, that Justin Lucas had such similar standing, although he later assigned that right under New York law to his brother, Nicholas Lucas.  Likewise, that Court rejected the government's argument that claimant did not have Article III standing

Page 21

to contest the forfeiture because they didn't either own nor was in actual possession of the currency at the time it was seized. That Court held that claimant need not own the property in order to have standing to contest the forfeiture and it was uncontested that David in that case was the bailee of the defendant currency for Michael and as bailee, therefore, David had Article III standing to contest the forfeiture of the currency pointing out "Moreover, although David was not in actual possession of the currency, he was in constructive possession of the currency when it was seized, and that...Constructive possession such as this is sufficient to confer upon David Article III standing." The same analysis should apply here in our case especially because lack of notice is basic to not only the Congressional intent of the statute as amended in 2000, but because lack of notice is even more egregious because at least in the lack of claimed probable cause cases, the claimant at least had an opportunity to be heard.

The Court in US v. $38,000, supra, then went on to discuss statutory standing and found that unlike the omnipresent Article III standing requirements, however, statutory standing requirements, such as those of the Supplemental rules, are implicated only when, and as the statute itself provides. In particular, until a claimant has a duty to establish statutory standing, the fact that the claimant has not yet done so is not grounds for dismissal. This is particularly relevant in our

case because Justin Lucas never knew he had a duty to establish statutory standing before the assignment because he never had notice of the administrative forfeiture proceeding because the government sent the notice to the wrong address when his correct address was right on the bail receipt itself (A-13).  The 11th Circuit found a way to do justice by concluding that the government in that case did not properly execute process and in effect disregarded statutory standing and proceeded to the merits because the government failed to give proper notice to the underlying summary forfeiture action.  The Court in that case further concluded that the complaint was completely devoid of any factual support for the government's allegation that it had probable cause for the forfeiture under §881 and that the complaint contained "not even a whiff of evidence to suggest that the currency was in any way linked to the exchange of a controlled substance" which was precisely the case here at hand.

Finally, the Court concluded in language that justifies being set forth in full here as follows: "We are not unsympathetic to the government's strong desire to eradicate drug trafficking: we recognize that illegal drugs pose a tremendous threat to the integrity of our system of government.  We must not forget, however, that the core of this system lies the Constitution, with its guarantees of individual rights.  We cannot permit these rights to become fatalities of the government's war

on drugs."

Appellant would also point out that this Court also has equitable jurisdiction in the forfeiture context as set forth in another 11th Circuit case, <u>Valderrama v. United States</u>, 417 F. 3d 1189 (11th Circuit, 2005) where it recognized that in cases where there may not sufficient basis to contest forfeiture the Courts can be guided by several considerations such as the following: (1) whether the government agent seized the property in callous disregard for the Constitutional rights of the petitioner; (2) whether the petitioner has an individual interest in and need for the material he seeks to have returned; (3) whether the petitioner would be irreparably injured by the denial of the return of the property; and (4) whether the petitioner has an adequate remedy at law.  It is respectfully submitted that in the instant case the original seizure by the Sheriff's Department was in callous disregard for the rights of Justin Lucas, he had an individual interest and a need for the cash bail to be returned which, he lawfully assigned to his brother, Nicholas Lucas, there is clearly irreparable injury by denying to return the sum of $50,000, and the District Court made it clear that the petitioner had no adequate remedy at law because it found that the assignment had taken place the month after the completion of the administrative proceedings for which Justin Lucas never was given notice.

Page 24

## <u>CONCLUSION</u>

That Appellant, Nicholas Lucas, as assignee of his brother, Justin Lucas,
asks that this Honorable Court grant to him the following relief:

1.    That the Memorandum-Decision and Order of the District Court dated
      May 22, 2014 dismissing the Petition herein should be reversed and
      the Petition reinstated and the case returned to the District Court
      Calendar, and, in the further discretion of this Court, assigned to a
      different District Court Judge, together with such other and further
      relief as to this Court is deemed just and proper.

2.    Determine that Appellant has sufficiently alleged facts in his Petition
      to the effect that New York State Law would control the sufficiency
      of the assignment of the bail receipt given to Justin Lucas by the
      Sheriff of Otsego County and having done so Appellant has
      demonstrated that he has the requisite Article III standing and has met
      the statutory requirements of 18 USC §983 to bring a Motion to set
      aside such forfeiture and that although the forfeiture had occurred
      prior to the giving of the assignment of said bail receipt from Justin
      Lucas to his brother, Petitioner Nicholas Lucas, the Petition still has a
      legally sufficient basis to challenge whether the DEA followed the

proper procedural safeguards in forfeiting the property, that is, whether it provided adequate notice and an opportunity to be heard, because since the facts alleged in the Petition clearly allege that the bail money was never a part of the criminal proceeds or criminal conduct of Nicholas Lucas when he was arrested for marijuana possession on January 5, 2011, particularly since it is clear from comparing the address on the bail receipt given to Justin Lucas with the notice(s) appear by the government's own documents to be defective as to the proper notice as required by the statute, the Petition therefore contains sufficient facts to state a claim.

3.    Determine that Nicholas Lucas, as assignee of Justin Lucas, has successfully and sufficiently stated a claim under 18 USC 983(e), and should the proof at a hearing, if necessary, confirm that the bail money was untainted by any criminal conduct of Justin Lucas or the proceeds of drug money in any way involved with the then criminal proceedings in State Court against Nicholas Lucas, the administrative forfeiture proceedings should be declared void, <u>ab initio</u>, because whether or not the administrative proceedings were completed before the assignment or not would be irrelevant because Justin Lucas never

had notice of the forfeiture proceedings in the first instance sufficient in time to have acted to have made the assignment to his brother earlier.

Respectfully Submitted,

*Wayne P. Smith*

Wayne P. Smith
Attorney for Plaintiff-Appellant
157 Barrett Street
Schenectady, New York 12305
(518) 393-1371
Bar Roll No.: 102631